**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

*FILED*

*JUL 11 2007*

*NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT*

| | |
|---|---|
| **MARK PENDLETON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **ALBERTO GONZALES,** | ) No. 04cv1838 (RJL) |
| **ATTORNEY GENERAL OF THE** | ) |
| **UNITED STATES,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

**MEMORANDUM OPINION**
(July _10_, 2007) [#19]

Mark Pendleton has sued Attorney General Alberto Gonzales for employment

discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)

*et seq.*. Currently before the Court is the defendant's motion for summary judgment.

Upon review of the pleadings and the applicable law, defendant's motion is GRANTED.

**I. BACKGROUND**

Mr. Pendleton, who is African-American, joined the Department of Justice's

("DOJ") Office of the Inspector General ("OIG") as a Special Agent in its Washington

Field Office in 1989.  Compl. ¶ 2.  Mr. Pendleton contends that over the course of the

next fifteen years he conducted more than 125 major investigations and successfully

served as the lead Special Agent in several cases designated "priority investigations." *Id*

¶ 19, 28.  Despite this experience and his achievements, Mr. Pendleton alleges he was

1

repeatedly passed over for promotion in favor of "less qualified, nonminority agents with far less experience." *Id* ¶ 3.

In particular, Mr. Pendleton applied for and was interviewed by an OIG selection panel for two Senior Special Agent positions in the OIG's Washington Field Office ("WFO"). *Id* at ¶ 37.  Ultimately, however, he was not selected. *Id* at ¶ 38.  According to Mr. Pendleton, the two non-minority agents that were selected, were less experienced and less qualified. *Id* ¶ 39.

In December 2003, Mr. Pendleton filed a complaint with the Equal Employment Opportunity Commission ("EEOC") challenging the OIG's failure to select him for either of these SSA position. *Id* ¶ 42.  When the EEOC failed to render a final decision within 180 days, Mr. Pendleton brought suit in this Court alleging two counts of employment discrimination.

Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) arguing, *inter alia*, that it has offered a legitimate, non-discriminatory explanation for Mr. Pendleton's non-selection.  The Court agrees.  Accordingly, the Court GRANTS defendant's motion for summary judgment.

## II.  STANDARD OF REVIEW

Under Rule 56, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  In deciding whether there is a

disputed issue of material fact, the Court must draw all justifiable inferences in favor of

the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Where

the court finds that facts material to the outcome of the case are at issue, a case may not

be disposed of by summary judgment.  *Id.* at 248.

### III. ANALYSIS

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an

employer "to fail or refuse to hire or to discharge any individual, or otherwise to

discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, religion, sex, or

national origin."  42 U.S.C. § 2000e-2(a)(1) (2006).

In a suit brought pursuant to Title VII, a plaintiff may prove his claim of

discrimination indirectly under the burden-shifting framework established in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Under this framework, a plaintiff-employee carries the initial burden of establishing, by a

preponderance of the evidence, a *prima facie* case of discrimination.  In order to do so in

the context of a failure to promote case, the plaintiff must show that: 1) he is a member of

a protected class; 2) he was qualified for and applied for a promotion; 3) he was

considered for and denied the promotion; and 4) after his rejection, the employer awarded

the position to a person no more qualified that the plaintiff. *Id.*

If the plaintiff can establish a *prima facie* case, the burden shifts to the

defendant-employer to "articulate a legitimate, nondiscriminatory reason for its actions."

*Stella v. Mineta*, 284 F.3d 135, 144 (D.C.Cir. 2002) (citing *McDonnell Douglas*, 411 U.S.

at 802, 93 S.Ct. 1817).  If the defendant can provide such a reason, the burden shifts back

to the plaintiff, who must then "demonstrate that the employer's stated reason was

pretextual and that the true reason was discriminatory." *Id* (citing *McDonnell Douglas* at

804, 93 S.Ct. 1817).

In the case at hand, the defendant contends that OIG selected the other two agents

on the basis of their superior organizational, communication and leadership skills and that

Mr. Pendleton was not selected because of his weakness in these same areas.[1]

Accordingly, defendant argues that even assuming that plaintiff can establish a *prima*

*facie* case of discrimination, it has proffered a legitimate, non-discriminatory explanation

for its hiring decision.  The Court agrees.  Accordingly, the burden shifts to the plaintiff

to demonstrate that the defendant's proffered explanation is mere pretext.  For the

following reasons, plaintiff has not done so here.

---

[1] The vacancy announcement for the SSA positions indicated that applicants needed to be able to demonstrate: the ability to oversee and coordinate the full range of investigative activity; effectively present information orally and in writing; plan, conduct and coordinate investigations; and be able to recognize, develop and present evidence that establishes legal liability "in a manner that meets requirements for presentation in various legal hearings and court proceedings."  OIG Vacancy Announcement, No: OIG-2003-28.  Given these requirements, the WFO selection panel evaluated applicants based on their leadership ability, character, integrity, judgment, diligence and timeliness.  Huggins Decl., p. 3.

In making his pretext argument, plaintiff contends that he was the most qualified applicant for the SSA positions and that discrimination can be inferred from his non-selection in favor of less qualified, non-minority applicants. Plaintiff further argues that SAC Huggins's has a history of discriminatory conduct which supports the inference that plaintiff's non-selection was the result of racial animus. The evidence in the record, however, does not support Mr. Pendleton's assertions.

Although Mr. Pendleton correctly argues that a court may infer discrimination where a plaintiff who was denied a promotion was significantly more qualified than the applicant who received the promotion, our Circuit has held that the qualifications gap must be "wide and inexplicable." *Holcomb v. Powell,* 433 F.3d 889, 897 (D.C. Cir. 2006)(quoting *Lathram v. Snow,* 336 F.3d 1085 (D.C. Cir. 2003). Such a gap does not exist in this case.

First, although Mr. Pendleton argues that he was more experienced than either of the other two agents selected, plaintiff acknowledges that seniority was not a critical element in the OIG's selection decision. Pl. Dep. 74:17-21. Moreover, although plaintiff had more years of investigatory experience, the other two agents selected were both experienced investigators by the time they applied for the SSA positions.

Second, although plaintiff argues that he has excelled throughout his career, his colleagues and former supervisors have testified that plaintiff has had difficulty handling complex investigations and consistently demonstrated a lack of organization and an

inability to communicate effectively.  As a result, plaintiff's supervisors have testified, plaintiff was ill-suited for the demands of the SSA position.

Indeed an Assistant Special Agent in Charge ("ASAC") who had worked with Mr. Pendleton in the past, averred that plaintiff had difficulty managing complex investigations and that his communication skills were limited.  Morrison Decl., p. 5-6. Likewise, another ASAC, who was a colleague of the plaintiff and later supervised him in the WFO, indicated that Mr. Pendleton lacked organization, had persistent problems with time management and consistently submitted written products that required extensive editing or rewriting.  Bourbon Decl., p. 6-7.

A third ASAC, who supervised Mr. Pendleton between 1997 and 2001, similarly averred that although plaintiff was a competent agent in most respects, his writing skills were poor and his written submissions required more attention and scrutiny than that of any other agent in the office.  Dorsett Decl., p. 4-10.  Indeed, that ASAC further testified that plaintiff was so disorganized and unfocused that he was unable to execute complex investigations without assistance and, as a result, could not be relied upon as a effective leader of other agents.  *Id* at 11.

Finally, Special Agent in Charge ("SAC") Charles Huggins, who served as Mr. Pendleton's second level supervisor, echoed these concerns, testifying that Mr. Pendleton had difficulty executing complex investigations, briefing superiors, and presenting his thoughts in writing.  Huggins Decl., p.6-8.  SAC Huggins further complained that Mr.

Pendleton lacked focus, attention to detail and the ability to multitask. *Id* at 7-8. As a result SAC Huggins concluded, plaintiff lacked the necessary skills to manage and supervise other agents. *Id*.

In contrast, an ASAC who supervised the two agents ultimately selected averred that both agents had demonstrated the ability to handle complex investigations and that both were efficient, hard working investigators with excellent leadership abilities and communication skills. Morrison Decl., p. 4-5. Similarly, SAC Huggins testified that he was personally aware that both agents had successfully led complex investigations and demonstrated superior organizational skills and leadership ability. Huggins Decl. 5-6.

Moreover, the selection panel was uniformly disappointed in plaintiff's interview performance. One ASAC noted that plaintiff's answers to questions were convoluted and inarticulate, while SAC Huggins found plaintiff's comments to be vague and unresponsive. Morrison Decl., p. 6-7; Huggins Decl., p. 8-9. Another ASAC likewise observed that plaintiff's answers were confusing and declared that his overall performance in the interview was "very possibly the worst of all the applicants interviewed." Bourbon Decl., p. 3. Again, by contrast, the selection panel was uniformly impressed with the two agents ultimately selected, finding both agents to be poised, mature and articulate. Morrison Decl., p. 5; Huggins Decl., p. 5-6; Bourbon Decl., p. 4.

The evidence in the record, therefore, does not support plaintiff's assertion that he was significantly more qualified that the applicants ultimately chosen. Indeed, although

the plaintiff's colleagues and supervisors agreed that plaintiff was a competent Special

Agent, they were unanimous in their belief that he was ill-suited to the position of SSA.

Additionally, although plaintiff contends that discrimination can be inferred from

SAC Huggins's prior discriminatory conduct, the Court finds no evidence of such

conduct by him, nor any reason to believe that plaintiff's non-selection was the result of a

pervasive racial animus in general at OIG.

First, although plaintiff contends that SAC Huggins "was known to make

disparaging comments about African-Americans," Pl. Mot. for Summ. Judg., p. 18, he has

offered no evidence of such conduct beyond a single ambiguous comment.  Although

plaintiff alleges that "other agents" overheard SAC Huggins make such remarks,

testimony from those "other" agents has not been offered.

In addition, although plaintiff argues that he was repeatedly passed over for

promotion throughout his career, he has failed to demonstrate that he was the most

qualified applicant for those positions or that SAC Huggins somehow barred his selection

for those positions.  Although plaintiff alludes to a perception among African-American

agents at OIG that they would be unable to obtain promotion as long as SAC Huggins

was involved in the selection decision, plaintiff offers no evidence, other than his own

assertion and that of one other agent, that this perception was widely held.  More

importantly, plaintiff has offered no evidence that this perception had some basis in fact.

Finally, even assuming, *arguendo*, that plaintiff had offered sufficient evidence to

support his allegation that SAC Huggins harbored some kind of animus towards African-

Americans, SAC Huggins was only one of three members of the selection panel that

chose not to select plaintiff for the SSA position.  All three members of the panel testified

that they had witnessed plaintiff's prior performance problems, and all three agreed that

his interview performance was poor.  Simply stated, there is no evidence to support the

inference that plaintiff's non-selection was the result of some general racial animus at

OIG.

    Based on the evidence in the record, therefore, the Court finds that the plaintiff has

failed to demonstrate that the defendant's proffered explanation of plaintiff's non-

selection was pretextual.  Accordingly, plaintiff has failed to prove discrimination under

Title VII.

## IV.  CONCLUSION

    For all of the reasons stated above, defendant's motion for summary judgment is

GRANTED.

RICHARD J. LEON
United States District Judge